## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**TIAVONDE JONES,**
**619 Norhurst Way**
**Catonsville, MD 21228**

*Plaintiff,*

**v.**

**WELLS FARGO BANK N.A.**                              **Case No.**
**101 N. Phillips Avenue**
**Sioux Falls, S.D. 57104**

**SERVE ON:**
**CSC- Lawyers Incorporating Service Co.**
**7 St. Paul Street**
**Suite 820**
**Baltimore, MD 21202**

*Defendant.*

## COMPLAINT AND JURY DEMAND

### INTRODUCTION

1.      Tiavonde Jones ("Ms. Jones") is a homeowner with a mortgage on her home. Knowing she would not be able to make her payments because of a significant increase in her monthly payments, Ms. Jones contacted Wells Fargo Bank, N.A. ("Wells Fargo"), the servicer of her loan, to apply for a loan modification. Wells Fargo denied her loan modification without providing the information required under federal law.

2.      This case concerns the ongoing practice of servicers like Wells Fargo placing their interest above that of the homeowner and unfairly and deceptively ignore their statutory duties. After their reasonable efforts to mitigate and resolve their mortgage situations are ignored, homeowners such as Ms. Jones are left with no other options but to seek the assistance of the

Courts to vindicate their rights.

3.      Had Wells Fargo performed the basic services required of mortgage servicers by reviewing Ms. Jones' application for loss mitigation and provided the required information, this action would not be necessary.

4.      In this action, Ms. Jones is seeking injunctive relief and seeking statutory and actual damages available under 12 U.S.C. § 2605(f) and 12 C.F.R. § 1024.41(a) as authorized by 12 U.S.C. § 2605(k)(1)(E) and 15 U.S.C. § 1641(f)(2). Plaintiff's damages include emotional damages manifested by fear, embarrassment, frustration and anger arising from Wells Fargo's refusal to appropriately consider her for loan modification and their threats of foreclosure, the losses she has incurred in the form of unnecessarily higher payments since Wells Fargo's refusal to appropriately consider Ms. Jones' loan modification application, and the damage done to her credit as a result of Wells Fargo's refusal to properly review her application for a loan modification. Plaintiff is also entitled as damages and losses for the attorney fees incurred by her to engage counsel to represent her in vindicating her right to be properly considered for a loan modification and thereafter present Wells Fargo a timely, complete loss mitigation application in reliance to Wells Fargo's representation and unqualified statement that it would provide her with all the rights available to her (and other borrowers) pursuant to 12 U.S.C. § 2605(k)(1)(E) and 12 C.F.R. § 1024.41; Wells Fargo is liable for these fees as actual damages to Ms. Jones under 12 U.S.C. § 2605(f) since Wells Fargo has failed to comply with its obligations under 12 C.F.R. § 1024.41 which is a violation of 12 U.S.C. § 2605(k)(1)(E).

**JURISDICTION**

7.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 since certain of the claims asserted herein arise under the laws of the United States as well as the Supremacy Clause

of the United States Constitution, art. VI, cl. 2.

8.      The Court has declaratory authority over the controversy pursuant to 28 U.S.C. § 2201, Fed. R. Civ. P. 57.

9.      Venue is appropriate in this Court pursuant to 28 U.S.C.A. § 1391 because a substantial portion part of the events or omissions giving rise to the claims before the Court occurred in this District.

**PARTIES**

10.     Tiavonde Jones is the owner of the real property at the center of this action at 619 Norhurst Way, Catonsville, MD 21228 (the "Property"). On July 16, 2007, Ms. Jones executed a promissory note and deed of trust in the amount of $526,000.00 from Wells Fargo Bank, N.A. for the Property.

11.     Defendant Wells Fargo is a loan servicer that regularly conducts business throughout the United States and in Maryland. Wells Fargo has acted as the mortgage servicer of Ms. Jones during all periods relevant to the Complaint. Wells Fargo alleges that it acts as the mortgage servicer on behalf of either HSBC Bank, N.A. ("HSBC"), as trustee for the certificate holders of the WFALT 2007-PA5, ("WFALT PA5") or HSBC Bank, N.A. ("HSBC), as trustee for the certificate holders of WFALT 2007-PA3, ("WFALT PA3").

12.     Wells Fargo has demonstrated a pattern and practice of violating federal servicing laws as they relate to loan modifications. Pursuant to the CFPB website, Wells Fargo was the number one "Most-Complained-About Companies for Mortgage" during August – October 2016, with 549 complaints with an 8% increase in complaints over the previous year. Since it started accepting consumer complaints in 2011, the CFPB has received over 925,160 complaints against Wells Fargo, 17,388 relating to loan modifications and 8,039 regarding to loan servicing.

13.     Wells Fargo entered into a Consent Judgment (aka National Mortgage Settlement (NMS)) with the Attorney General of the State of Maryland, and 48 other States' Attorneys General, including the Attorney General of the State of New York.  It is Case No. 12-0361 filed on April 4, 2012.   New York Attorney General Eric Schneiderman filed a federal lawsuit against Wells Fargo due to Wells Fargo's violations of the $25-billion National Mortgage Settlement.  Mr. Schneiderman has stated that Wells Fargo subjects borrowers who seek modification to "Kafkaesque delays and obstructions" in violation of the NMS.

14.     In its quarterly reports to congress, the Office of the Special Inspector General for the Troubled Asset Relief Program ("SIGTARP") provides data and information regarding the HAMP (Home Affordable Modification Program) and the 7 largest servicers, including Wells Fargo, as to their performance in complying with HAMP and TARP guidelines.  The SIGTARP October 26, 2016, report stated: "That HAMP has fallen well short of helping the 3 to 4 million homeowners envisioned for the program, and that mortgage servicers' misconduct in HAMP have been the subject of homeowner complaints and enforcement actions is well known." The report continues to state that "known rule breaking by servicers include: (1) wrongfully denying homeowners admission to HAMP. . . ".   The report found that Wells Fargo had a 68% HAMP denial rate.

## FACTS

15.     On June 16, 2007, Ms. Jones executed a promissory note ("Note") and deed of trust ("DOT") in the amount of $526,000.00 from Wells Fargo for the property located at 619 Norhurst Way, Catonsville, MD 21228. The note was an interest only note until September of 2017 at which time the payments would include principal and interest.

16.     The Note was subsequently securitized and at some point, allegedly became held by a WFALT Trust.

17.     Wells Fargo has claimed that two separate and distinct parties are the owner of the subject loan, WFALT 2007-PA5 and WFALT 2007-PA-3.  Each securitized Trust or pool of loans has its own, unique Pooling and Servicing Agreement that governs the servicer's requirements as to how it services the loans in that specific pool of loans. The contradictory information has been provided to Plaintiff over a number of years.

- 7/29/2014 WF claimed owner is 2007-PA5

- 7/14/2015 WF claimed owner is 2007-PA5

- 2/16/2016 WF claimed owner is 2007-PA3

- 4/24/2017 WF claimed owner is 2007-PA5

- 6/2/2017 WF claimed owner is 2007-PA5

- 8/17/2017 WF claimed owner is 2007-PA3

- 9/18/2017 WF claimed owner is 2007-PA5

18.     Concerned that Wells Fargo had named two different owners or investors of her loan, Ms. Jones issued a letter to Wells Fargo on April 10, 2017, requesting the name of the investor of her loan via a Qualified Written Request.

19.     Wells Fargo responded via a letter dated April 24, 2017 stating that the owner of her loan is WFALT 2007-PA5.  However, there is still confusion as to the owner as Wells Fargo has since claimed the owner is WFALT 2007-PA3 as recently as August 17, 2017.

**Ms. Jones Applies for a Loan Modification and Wells Fargo Denies it in Violation of the Real Estate Settlement Procedures Acts ("RESPA") and Regulation X**

20.     As September 1, 2017, was drawing near and Ms. Jones determined she would not be able to afford her mortgage payment when it adjusted from $3,073.26 per month to $4,149.56

per month and sought a loan modification from Wells Fargo who, in a letter dated May 19, 2017, advised her that her complete loan modification package was due no later than June 18, 2017.

21.     On or about May 24, 2017, Ms. Jones submitted a complete loan modification application. This submission was acknowledged by Wells Fargo in a letter dated May 31, 2017. (Exhibit 1).

22.     In a letter dated June 2, 2017, Wells Fargo denied Ms. Jones' application for a loan modification. (Exhibit 2).

23.     Pursuant to federal law, if a borrower's loss mitigation application is denied for any trial or permanent loan modification option, then the servicer shall state in the notice sent to the borrower pursuant to 12 C.F.R. § 1024.41(c) "[t]he specific reasons for the servicer's determination for each such trial or permanent loan modification option[.]" *Id*. at §1024.41(d).  It is not sufficient for the servicer to state the denial is based on an investor requirement, the servicer has to identify the specific owner, assignee, investor or guarantor whose rules mandated the rejection, and specifically identify the requirement that is the basis of the denial. Consumer Financial Protection Bureau's Official Staff Commentary on Regulation X, F.R.R.S. 6-1444.94, 2014 WL 2195779, at §1024.41(d)(1).  Wells Fargo has failed to identify the specific investor requirement as required that resulted in the denial nor provide evidence supporting that determination.

24.     12. C.F.R. § 1024.38 (b)(2)(i) and (ii) require that the servicer provide accurate information regarding loss mitigation options available to the borrower and to "identify with specificity all loss mitigation options for which borrowers may be eligible pursuant to any requirements established by an owner or assignee of the borrower's mortgage loan". Wells Fargo has failed to provide Ms. Jones with this information.

25.     In its June 2, 2017 letter Wells Fargo declined Ms. Jones for a "Piggy-Back" program because "[Ms. Jones'] loan on the [P]roperty . . . has already received the maximum number of modifications allowed," however, Wells Fargo failed to state specifically what program or Investor Guidelines set the upper limit on the number of loan modifications allowed, what the upper limit of loan modifications is, and how many loan modifications Wells Fargo believes Ms. Jones has had in violation on 12 C.F.R. § 1024.41.

26.     Wells Fargo also stated in its June 2, 2017 letter that it did not continue its review of the "Piggy-Back" program but "moved to evaluate you for the next available program based on your information and the qualifications associated with your loan," failing to state what the "next available program" might be and what the results were of that review.

27.     The Investor Guidelines of HSBC Bank USA, N.A. as trustee for WFALT 2007-PA5 and WFALT 2007-PA3 which Wells Fargo asserts it is the servicer on behalf of, are available publicly, however, on review, the documents reveal no requirement limiting the number of modifications available to a borrower.

28.     Pursuant to Wells Fargo's website, there "are multiple loan modification programs available". Based on Wells Fargo's June 2, 2017, letter it appears that Ms. Jones was only evaluated for one program, the "Piggy-Back" program.

29.      Ms. Jones, through counsel, appealed the denial of her application, informed Wells Fargo of these problems with their denial of her application, and requested that the omitted information be provided in a letter dated June 20, 2017. (Exhibit 3).

30.     In a letter dated July 11, 2017, Wells Fargo responded to Counsel's letter saying:

In response to your appeal request, we have completed a review of the decision we made about your mortgage.
Here's what we found

After carefully reviewing the information we currently have, we have determined
that you still do not meet the requirements for a loan modification.
(Exhibit 4).

31.     This form denial letter did not provide any additional information required by law

nor requested by Ms. Jones. Because of this lack of information, Ms. Jones had to pay her attorney

write a series of letters and make phones calls to attempt to determine what the applicable

guidelines were and whether they were properly applied.

32.     On July 25, 2017, Plaintiff through Counsel sent a notice of error and QWR

regarding a number of issues including identifying the proper investor's guidelines. (Exhibit 5).

33.     On August 10, 2017, Ms. Jones filed a complaint with the Consumer Financial

Protection Bureau.

34.     In a response to the QWR, dated August 17, 2017, Wells Fargo stated that the

guidelines which resulted in Ms. Jones' application being denied "are considered to be

confidential, privileged and/or proprietary information of Wells Fargo." For this reason, Wells

Fargo has refused to comply with 12 C.F.R. § 1024.41 and specifically provide the information

requested and required by law. (Exhibit 6).

35.     In addition, in the August 17, 2017 letter, Wells Fargo claimed that it was the

servicer on behalf of WFALT 2007-PA3, which is a different party that claimed in response to the

QWR in April. (*Id.*)

36.     In an August 21, 2017 letter, Wells Fargo expanded on its previous letter refusing

to provide the guidelines which indicated that Ms. Jones' should be denied. (Exhibit 7).

37.      As a direct and proximate result of the acts and omissions of Wells Fargo

described *supra*, Ms. Jones is entitled to statutory damages available under the claims asserted

herein. In addition, Ms. Jones is entitled to other economic and non- economic damages, directly

related to and proximate to the illegal acts and omissions of the Defendant, including: (i) attorney fees and costs and postage costs incurred by Ms. Jones in seeking information to which she is entitled and which has been unlawfully withheld; (ii) the emotional damages manifested from the embarrassment, humiliation, and fear that Wells Fargo is going to disregard her rights and simply proceed to foreclosure without providing an appropriate review of her application for loan modification pursuant to federal law; (iii) the actual damages suffered as measured by the difference between the terms of a modified for which she is eligible and the loan that she has been forced to remain in as measured from the date of the first unlawful denial; and (iv) the damages inflicted on Ms. Jones through Wells Fargo's reports to Credit Reporting Agencies which are the result of Wells Fargo's refusal to abide by federal law. These damages and losses would have been avoided all together if Wells Fargo had not ignored Ms. Jones' right to exhaust loss mitigation options and provided the documentation sought.

### COUNT I – VIOLATIONS OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT, 12 U.S.C.A § 2605, *ET SEQ. AND REGULATION X, 12 C.F.R. § 1024.41*

38.     Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

39.     Plaintiff is a "borrower" entitled to the protections codified at 12 U.S.C.A. § 2605 and 12 C.F.R. § 1024.41. The mortgage loan subject to this action is a federally related mortgage as defined in 12 C.F.R.1024.2 and involves a consumer transaction at the time the loan was taken out by the Plaintiff.

40.     Wells Fargo is a mortgage servicer subject to the mandatory requirements of 12 U.S.C.A. § 2605 and 12 C.F.R. § 1024.41.

41.     Among other practices, RESPA and its implementing regulations require a mortgage servicer, such as Defendant Wells Fargo to review Plaintiff for all loss mitigation options available to her and to state "[t]he specific reasons for the servicer's determination for

each such trial or permanent loan modification option[.]" 12 C.F.R. §1024.41(d).  It is not sufficient for the servicer to state the denial is based on an investor requirement, the servicer has to identify the specific owner, assignee, investor or guarantor whose rules mandated the rejection, and specifically identify the requirement that is the basis of the denial. Consumer Financial Protection Bureau's Official Staff Commentary on Regulation X, F.R.R.S. 6-1444.94, 2014 WL 2195779 at §1024.41(d)(1).

42.     Wells Fargo violated §1024.41(d) in June 2, 2017 denial when it stated that Ms. Jones was denied because her "loan on the property noted above has already received the maximum number of modifications allowed" because Wells Fargo later admitted "Please note, there isn't a specific number of modifications the account is allowed…."

43.     By failing to provide the correct specific information, Plaintiff was unable to determine whether she was rightfully denied and utilize her appeal rights correctly.

44.     Despite the lack of information, Plaintiff submitted a substantive appeal including reference to the Pooling and Servicing Agreement which controls the terms of the servicing of the loan which does not contain any reference to the maximum amount of modifications allowed for a borrower.

45.     In response to her appeal, Wells Fargo did not provide any information and simply replied with a form letter.

46.     This lack of information and lack of correct information, required Plaintiff to expend additional financial resource by paying her attorney to draft at least two more notice of error letters and a complaint to the CFPB before receiving any additional information.

47. At no point has Wells Fargo provided any evidence of the existence of these guidelines present in the PSA or Investor Guidelines which support its claimed reason for the denial of the Plaintiff's modification application.

48. WHEREFORE, pursuant to 12 U.S.C. Plaintiff respectfully requests that the Court (i) enter judgment in favor of Plaintiff against Wells Fargo for its violations of 12 U.S.C. § 2605 and 12 C.F.R. § 1024.41 by refusing to state specifically the basis for its denial of Ms. Jones' application in its denial letters; (ii) award actual damages and losses sustained by the Plaintiff as a direct and proximate result of the acts and omissions described herein as determined by the trier of fact; (iii) award statutory damages in the amount of $2,000.00 as Wells Fargo has demonstrated a pattern and practice of RESPA and servicing violations; (iv) award Plaintiff costs; (v) award attorney's fees; (vi) grant Plaintiff injunctive relief by ordering Wells Fargo to consider an amended application for loan modification pursuant to guidelines set forth by the court and to comply fully with 12 C.F.R. § 1024.41 in its review thereof; (vii) grant Plaintiff injunctive relief by ordering Wells Fargo to produce all documents in their entirety which it claims exist and on which Wells Fargo claims to have relied in its denial of Ms. Jones' application; and (vii) other and further relief as the Court finds necessary and proper.

**COUNT II – VIOLATIONS OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT, 12 U.S.C.A § 2605,** *ET SEQ. AND REGULATION X,, 12 C.F.R.1024.36*

49. Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

50. Wells Fargo violated 12 C.F.R. 1024.36(d)(1) and (2) and 12 U.S.C.. 2605(K)(1)(d) as it has provided different investor names in response to Qualified Written Requests.

51. 12 C.F.R. 1024.36(d) requires the servicer to conduct a reasonable search as to

the borrower's request for information. Wells Fargo responded to Ms. Jones' April 5, 2017, Notice of Error/Qualified Written Request that the owner of her loan was WFALT 2007-PA5. However, on August 17, 2017, Wells Fargo responded to Ms. Jones' July 25, 2017, Notice of Error/Qualified Written Request that the owner of her loan was WFALT 2007-PA3.   Clearly Wells Fargo has failed to conduct a reasonable search as to the owner of Ms. Jones' loan as Wells Fargo has provided the name of two different and distinct owners of her loan.

52.      Wells Fargo violated 12 U.S.C. 2605(K)(1)(d) requirement to respond within 10 business days to provide the identity of the owner of the mortgage loan in one of the circumstances as two different owners names were provided.

53.      This second request is not duplicative because Ms. Jones was requesting the applicable guidelines for the investor, when Wells Fargo provided the name of a different entity.

54.      Because the incorrect information has been given, Plaintiff has suffered damages in form additional attorneys and postage fees associated with follow up correspondence to attempt clear up the issue as well as increased aggravation and lost time associated with the discrepancy.

55.      WHEREFORE, pursuant to 12 U.S.C. Plaintiff respectfully requests that the Court (i) enter judgment in favor of Plaintiff against Wells Fargo for its violations of 12 U.S.C. § 2605 and 12 C.F.R. § 1024.36 by failing to conduct a reasonable investigation and provide the name of the owner/investor of her loan within 10 business days from the request; (ii) award actual damages and losses sustained by the Plaintiff as a direct and proximate result of the acts and omissions described herein as determined by the trier of fact; (iii) award statutory damages in the amount of $2,000.00 as Wells Fargo has demonstrated a pattern and practice of RESPA and servicing violations; enter an order that Defendant is obliged under 12 C.F.R. § 1024.41(d) to divulge all criteria on which loan modifications are denied including but not limited to servicer

guidelines, investor guidelines, and all other guidelines which govern loan modification determinations; (v) award Plaintiff costs; (vi) award attorney's fees; and (vii) other and further relief as the Court finds necessary and proper.


## PLAINTIFF DEMANDS A TRIAL BY JURY

Respectfully Submitted,


Date:__January 2, 2018_____          _____/s/ F. Peter Silva II
                                              F. Peter Silva II, Esq.
                                              Attorney Code: 19464
                                              Gowen Rhoades Winograd & Silva PLLC
                                              513 Capitol Ct NE STE 100
                                              Washington, DC 20002
                                              Tel: 202-380-9355
                                              Fax: 202-499-1370
                                              Psilva@gowenrhoades.com
                                              *Attorney for Plaintiff*