## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

TIAVONDE JONES
    *Plaintiff,*

    v.

                                 Civil Action No. ELH-18-8

WELLS FARGO BANK, N.A.
    *Defendant.*

## MEMORANDUM OPINION

In this consumer protection action, plaintiff Tiavonde Jones has sued Wells Fargo Bank, N.A. ("Wells Fargo" or the "Bank"), alleging violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq.*, and certain of its implementing regulations, known as Regulation X, 12 C.F.R. §§ 1024.1-1024.41. The suit is largely rooted in an application for a mortgage loan modification requested by plaintiff on or about May 24, 2017, in connection with real property that she owns in Catonsville, Maryland. *See* ECF 1 ("Complaint"). Plaintiff included numerous exhibits with her suit. ECF 1-2.

In Count I of the Complaint, Jones alleges, *inter alia*, that the Bank violated RESPA, 12 U.S.C. § 2605, "by refusing to state specifically the basis for its denial of Ms. Jones' application in its denial letters . . . ." ECF 1, ¶ 48; *see also id.* ¶¶ 42, 47. She also complains that the Bank violated RESPA by failing "to review Plaintiff for all loss mitigation options available to her . . . ." *Id.* ¶ 4. In Count II, plaintiff asserts, *inter alia*, that Wells Fargo violated RESPA by "failing to . . . provide the name of the owner/investor of [plaintiff's] loan within 10 business days from [her] request . . . ." *Id.* ¶ 55.

Plaintiff seeks injunctive relief, statutory damages, and actual damages under 12 U.S.C. § 2605(k)(1)(E) and 15 U.S.C. § 1641(f)(2). *Id.* ¶ 4. In particular, she seeks compensation for

emotional distress, attorneys' fees, postage costs, and "lost time associated with" the alleged discrepancy in the identification of the owner of her loan. ECF 1, ¶¶ 44, 48, ¶ 54.

Wells Fargo has moved to dismiss the Complaint (ECF 12), pursuant to Fed. R. Civ. P. 12(b)(6), supported by a memorandum of law (ECF 12-1) (collectively, the "Motion"). Plaintiff opposes the Motion. ECF 15 ("Opposition"). The Bank has replied. ECF 16 ("Reply").

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall grant the Motion.

## I.     Factual and Procedural Background[1]

### A.

Jones is the owner of a home located in Catonsville, Maryland (the "Property"). ECF 1, ¶ 10. On July 16, 2007, she executed a promissory note ("Note") and deed of trust ("DOT") in the amount of $526,000.00 from the Bank for the Property (the "Mortgage" or the "Loan"). *Id.*; *see also id.* ¶ 15.[2]

At all relevant times, Wells Fargo has been the servicer of the Mortgage. *Id.* ¶ 11. Plaintiff states, *id.*: "Wells Fargo . . . acts as the mortgage servicer on behalf of either HSBC Bank, N.A. ('HSBC'), as trustee for the certificate holders of the WFALT 2007-PA5, ('WFALT PA5') or HSBC Bank, N.A. . . . as trustee for the certificate holders of WFALT 2007-PA3, ('WFALT PA3')." *Id.*

According to Jones, the Loan initially was "an interest only note until September of 2017

---

[1] As discussed, *infra*, in the posture of this case, I must assume the truth of the facts alleged by Jones. But, I may consider exhibits appended to the suit and take judicial notice of public records, without converting the Motion to one for summary judgment.

[2] In ECF 1, ¶ 15, plaintiff asserts that the Note and the DOT were executed on *June* 16, 2007. But, in ¶ 10 she states that the documents were executed on *July* 16, 2007. The discrepancy is not material.

at which time the payments would include principal and interest." *Id.* ¶ 15. On an unspecified date, the Note was "securitized" and "allegedly became held by a WFALT Trust." *Id.* ¶ 16. Jones states: "Wells Fargo has claimed that two separate and distinct parties are the owner of the subject loan." *Id.* ¶ 17. They are, *id.*: WFALT 2007-PA5 ("PA5") and WFALT 2007-PA3 ("PA3"). HSBC acts as trustee for PA3 and PA5.

According to plaintiff, "[e]ach securitized Trust or pool of loans has its own unique Pooling and Servicing Agreement that governs the servicer's requirements as to how it services the loans in that specific pool of loans." *Id.* And, she asserts that, "over a number of years," Wells Fargo has provided plaintiff with "contradictory information" as to the owner of her Loan. *Id.*

In particular, plaintiff complains that the Bank periodically identified two different owners of her Loan: PA3 and PA5. ECF 1, ¶¶ 17, 18. Therefore, plaintiff's attorney wrote to the Bank on or about April 5, 2017. ECF 1-2 at 43-47; ECF 1, ¶ 18.[3] Plaintiff states that the letter constituted both a "Notice of Error" and a Qualified Written Request ("QWR"). ECF 1-2 at 43-47 (hereinafter, the "First QWR"); *see id.* at 43-44.

In the letter, plaintiff's counsel stated, *inter alia*, that from April 27, 2010 through February 16, 2016, "multiple parties have been named as the owner/investor of [plaintiff's] loan." *Id.* Counsel asked the Bank to "provide the name of the owner/investor of Ms. Jones' mortgage . . . ." *Id.* at 43-44. Additionally, plaintiff's counsel acknowledged that plaintiff's previous attempts to modify the Loan had been denied by the Bank because, *inter alia*, plaintiff "ha[d] exceeded modification limits." *Id.* at 44. Counsel requested additional documents and

---

[3] Plaintiff states that the letter is dated April 10, 2017. ECF 1, ¶ 18. Close inspection reflects that the actual date is April 5, 2017. It appears that Wells Fargo received the letter on April 10, 2017. The discrepancy is not material.

information as to the basis for the modification denials.  *Id.* at 45-47.

By letter dated April 24, 2017, Wells Fargo responded.  *Id.* ¶ 19.  It advised that PA5 was the "owner of her loan."  *Id.*[4]  However, plaintiff avers that "as recently as August 17, 2017," Wells Fargo claimed that PA3 is the owner of the Loan.  *Id.*

According to Jones, on September 1, 2017, her monthly Loan payment was scheduled to increase from $3,073.26 per month to $4,149.56 per month.  *Id.* ¶ 20.  Concerned that she "would not be able to afford" the higher monthly rate (*id.*), Jones submitted a "complete loan modification application" to Wells Fargo (the "Application") on or about May 24, 2017.  *Id.* ¶ 21.[5]  Notably, plaintiff had previously obtained two other Loan Modifications – one in or about April 2010 and one in December 2015.  *See* ECF 1-2 at 31-34 (April 2010); ECF 1-2 at 35-40 (December 31, 2015).

By letter to plaintiff dated May 31, 2017 (ECF 1-2 at 2-4), Wells Fargo informed plaintiff that it would review the Application "to determine if [she was] eligible for mortgage payment assistance through a loan modification."  *Id.* at 2.  Additionally, Wells Fargo informed Jones that it may take "up to 30 days" for the review.  *Id.*  According to the Letter of May 31, 2017, "at least one bankruptcy case" had been filed in relation to the Property.  *Id.*[6]

In a letter from the Bank to plaintiff dated June 2, 2017 (ECF 1-2 at 6-8) (the "Denial Letter"), Wells Fargo informed plaintiff that she did not qualify for a "Piggy-Back or Piggy-[B]ack w/ Temporary Rate Reduction" Loan modification (hereinafter, the "Piggy-Back Program").  *Id.* at 6-7.  It explained that, under the Piggy-Back Program, *id.* at 6, "[p]ast due

---

[4] It does not appear that the letter of April 24, 2017, was submitted with the suit.

[5] According to plaintiff, Wells Fargo had advised her that a "complete loan modification package was due no later than June 18, 2017."  *Id.* ¶ 20.

[6] Plaintiff provides no context for the bankruptcy proceeding.

payments are set aside but carried for the life of the loan as a zero interest, zero payment balance . . . [and become] due upon payoff of the loan or at maturity, whichever occurs first." Plaintiff was advised that she did not qualify for the Piggy-Back Program because her Loan "has already received the maximum number of modifications allowed." *Id.* at 7.

Further, the Denial Letter provided, *id.*: "Once [Wells Fargo] determined that [Jones] did not meet the requirements" of the Piggy-Back Program, the Bank "moved to evaluate [her] for the next available program based on [her] information and the qualifications associated with [her] loan." In particular, the Bank identified "other options," such as a "short sale," whereby Jones would list her home for sale at a price below the amount she owed on the Property. *Id.* Additionally, the Bank suggested a "deed in lieu of foreclosure," advising Jones that if she chose that option she "must agree to vacate the property within an agreed upon time." *Id.* And, Wells Fargo informed Jones that she could appeal the Denial Letter "within 20 calendar days." *Id.*; *see also* ECF 1-2 at 9 (the "Appeal Request Form").

Plaintiff's lawyer submitted an appeal to the Bank as to the Denial Letter, dated June 20, 2017. ECF 1, ¶ 29; ECF 1-2 at 11-14 (the "Appeal Letter"). Counsel argued, *inter alia*, that "Wells Fargo ha[d] failed to state specifically what the program and/or investor requirements are regarding the maximum number of allowable modifications" on the Loan, in violation of 12 C.F.R. § 1024, Supp. I, § 41(d). *Id.* at 13. Additionally, counsel complained that "Wells Fargo failed to provide the number of previous modifications it claims that Ms. Jones has had and . . . the exact number of the allowable loan modifications under the 'Piggy-Back' program and the investor guidelines." *Id.* According to counsel, without this information, plaintiff could not "effectively dispute the validity of [the Bank's] reason for a denial." *Id.*

Plaintiff has acknowledged that the "investor guidelines" she demanded from Wells

Fargo were "publically available." ECF 1-2 at 13 (citing SEC INFO, WELLS FARGO ALTERNATIVE LOAN 2007-PA5 TRUST — '8-K' FOR 10/29/07 – EX-10.1 (last visited August 16, 2018), http://www.secinfo.com/dRSm6.u2Dc.b.htm#ndjc) (hereinafter, the "Investor Guidelines"). Her lawyer insisted that the Investor Guidelines contain "no requirement limiting the number of modifications available to a borrower." ECF 1-2 at 13; *see also* ECF 1, ¶ 27.[7]

The Investor Guidelines cited at ECF 1-2 at 13 provide: "No modification, recast, extension, or capitalization of delinquent payments of a Mortgage Loan other than as provided in Section 12.3.6 hereof shall be permitted with respect to a Mortgage Loan." *See* Investor Guidelines, § 12.3.7. Under § 12.3.6 of the Investor Guidelines, the Bank may enter into a forbearance plan in which the Bank "provides that the total amount owed during such Delinquency, including costs and expenses, will be repaid within the shortest period practicable, commencing immediately."

In the Appeal Letter, plaintiff's counsel also complained that although Wells Fargo offers multiple programs, plaintiff was only evaluated for the Piggy-Back Program. ECF 1-2 at 13. According to plaintiff's attorney, the Bank's failure to "identify with specificity all loss mitigation options for which [Jones] may be eligible . . ." constituted a RESPA violation. *Id.* And, plaintiff's counsel requested additional "information immediately" as to "all of [the] loss mitigation options available to [plaintiff]." *Id.*

 Wells Fargo wrote to plaintiff on July 11, 2017 (ECF 1-2 at 16-17), stating that it had reviewed the Appeal Letter and had determined that she "still do[es] not meet the requirements

---

[7] A court "may properly take judicial notice of 'matters of public record' and other information that, under Fed. R. Evid. 201, constitute 'adjudicative facts.'" *Goldfarb v. Mayor & City Council of Balto.*, 791 F.3d 500, 508 (4th Cir. 2015) (*Philips v. Pitt Cty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011).

for a loan modification." *Id.* at 16; *see* ECF 1, ¶ 30.  The Bank reiterated the options previously made available to Jones, which included a short sale or deed in lieu of foreclosure.  ECF 1-2 at 16.

Plaintiff's lawyer responded to the Bank on July 25, 2017, in correspondence he identified as a notice of error and a QWR.  ECF 1, ¶ 32; *see* ECF 1-2 at 20-23 ("Second QWR"). He claimed that the Bank's letter of July 11, 2017, "failed to adequately address the issues raised" in the Appeal Letter.  *Id.*  Moreover, counsel asked Wells Fargo to address the alleged errors "immediately."  *Id.* at 22.  And, he "itemized" what he deemed to be the pertinent errors, as follows, *id.* at 21-22:

- Wells Fargo is to provide the source of the requirement that resulted in Wells Fargo's statement "Your loan on the property noted above has already received the maximum number of modifications allowed[.]"
- If the source of this requirement is an investor restriction and/or guideline, then Wells Fargo must provide where that restriction and/or guideline is found, i.e. the Pooling and Servicing Agreement.
- Wells Fargo is to provide the maximum number of loan modifications allowed.
- Wells Fargo is to provide the date of each loan modification it purports that Ms. Jones has obtained on the subject property.
- Wells Fargo is to provide the name, eligibility requirements and results of "the next available program" it claims it reviewed [as to] Ms. Jones pursuant to Wells Fargo's letter dated June 2, 2017.

On August 10, 2017, plaintiff filed a complaint with the Consumer Financial Protection Bureau ("CFPB").  ECF 1, ¶ 33.  She provides no additional information as to her CFPB complaint.

Wells Fargo sent a letter to plaintiff's counsel, dated August 17, 2017 (ECF 1-2 at 25-26), in which it responded to the Second QWR.  *See also* ECF 1, ¶¶ 34, 35.  The Bank stated, *inter alia*, that it was reviewing "the investor guidelines," the "[n]umber of allowable modifications" for plaintiff's account, her "[p]reviously completed modifications," and other "Note holder

information." ECF 1-2 at 25. In addition, the Bank indicated that it would provide a complete response by August 24, 2017. *Id.* But, it also provided "an update" as to the concerns voiced by plaintiff. *Id.* In particular, the Bank stated that it was "unable to provide" the "investor guidelines" because the Bank had determined that the guidelines are "confidential privileged and/or proprietary information of Wells Fargo." *Id.* Further, the Bank stated that it was the "servicer" of plaintiff's Loan, on behalf of "owner/assignee" PA3. *Id.* at 26; *see also* ECF 1, ¶ 35.

In a letter from the Bank to plaintiff's attorney dated August 21, 2017 (ECF 1-2 at 29-30) (the "Final Review Letter"), Wells Fargo stated that it had finished researching plaintiff's concerns. *Id.* at 29; *see* ECF 1, ¶ 36. It identified plaintiff's Loan as "an asset-backed security that is secured by a mortgage, or more commonly a collection ('pool') of mortgages." ECF 1-2 at 29. The Bank explained, *id.*: "These mortgages are sold to a group of individuals (a government agency or investment bank) that 'securitizes' or packages the loans together into a security that can be sold to investors."

According to the Bank, "[t]here are many workout limitations associated with this type of loan," including, *inter alia*, that the Bank cannot "set aside or forgive any portion of the principal balance"; it cannot "increase the principal balance of the loan"; it cannot "permanently reduce the mortgage interest rate . . . ." *Id.* Moreover, the Bank stated that the Loan was not eligible for the Home Affordable Modification Program ("HAMP"). *Id.* In addition, the Bank reiterated that it was "unable to provide" plaintiff with a copy of the "investor guidelines." *Id.*

Of import, the Bank stated that it was bound by "[f]requency limitations (Per investor guidelines, the account is eligible after five years have passed since the most recent completed modification)[.]" *Id.* As to the number of allowable modifications for plaintiff's Loan, the Bank

stated that "there isn't a specific number of modifications the account is allowed." *Id.* at 30. Rather, it said that plaintiff's Loan "can qualify for an additional modification once every five years has passed since the previous modification finalized." *Id.* According to the Bank, plaintiff's most recent "modification was completed on January 14, 2016." *Id.*[8] Accordingly, plaintiff was deemed ineligible for a Loan modification with respect to the Application she filed on May 24, 2017 (ECF 1, ¶ 21). *See* ECF 1-2 at 30.

Further, the Bank stated that "there are a few workout options for which [plaintiff's] account could qualify," including "up to 12 past due payments to be combined into a 'piggy-back.'" *Id.* at 29. Additionally, the Bank stated that plaintiff's Loan could qualify for a "[t]emporary rate reduction" or a "[r]epayment plan[.]" *Id.* However, the Bank stated that it was unable to "provide specifics for which options the account may qualify because if [an account] is found outside the guidelines, the review is complete." *Id.* at 30.

According to plaintiff, "Wells Fargo has demonstrated a pattern and practice of violating federal servicing laws as they relate to loan modifications." ECF 1, ¶ 12. She also maintains that between July 2014 and September 2017, the Bank provided contradictory information as to which of two distinct parties (PA5 and PA3) owns her Loan. ECF 1, ¶ 17.

**B.**

In Count I of the Complaint, plaintiff alleges that the Denial Letter of June 2, 2017, violated RESPA and 12 C.F.R. § 1024.41(d), because the Bank stated that plaintiff's Loan on the Property had "already received the maximum number of modifications allowed", but Wells Fargo "later admitted . . . there isn't a specific number of modifications the account is

---

[8] As noted, a copy of a "Loan Modification Agreement (Deed of Trust)" signed by Jones and dated December 31, 2015, was submitted with the Complaint. *See* ECF 1-2 at 35-40. This agreement appears to be the Loan modification that Wells Fargo stated was "completed" in January 2016. *See id.* at 30.

allowed . . . ." ECF 1, ¶ 42. According to plaintiff, "[b]y failing to provide the correct specific information, [she] was unable to determine whether she was rightfully denied" the request to modify her Loan. *Id.* ¶ 43. Further, plaintiff avers, *id.* ¶ 47: "At no point has Wells Fargo provided any evidence of the existence of . . . Investor Guidelines which support its claimed reason for the denial of the Plaintiff's modification application."

As to Count II of the Complaint, plaintiff avers that Wells Fargo violated 12 C.F.R. 1024.36(d)(1) and (2), because the Bank "provided different investor names in response to Qualified Written Requests" made by plaintiff. ECF 1, ¶ 50. As noted, in the Bank's letter of April 24, 2017 (ECF 1, ¶ 19), Wells Fargo stated that PA5 was the owner of plaintiff's Loan. *See also id.* ¶ 51. And, by letter of August 17, 2017 (ECF 1-2 at 25-26), the Bank stated that PA3 was the owner of plaintiff's Loan. *Id.* at 26; *see also* ECF 1, ¶¶ 17, 51. On this basis, plaintiff avers that Wells Fargo has "failed to conduct a reasonable search as to the owner of Ms. Jones' [L]oan . . . ." ECF 1, ¶ 51. And, plaintiff alleges that Wells Fargo violated 12 U.S.C. § 2605(k)(1)(D) because it failed "to respond within 10 business days to provide the identity of the owner of the mortgage loan . . . as two different owners names were provided." *Id.* ¶ 52.

In its Motion (ECF 12), Wells Fargo contends, *inter alia*, that its decision to deny plaintiff's request for a Loan modification, and its communications with plaintiff about the decision to deny the Loan modification, comply with RESPA and its implementing regulations as a matter of law. *See* ECF 12-1 at 4. Moreover, Wells Fargo argues that plaintiff has failed to state a plausible claim under RESPA and its supporting regulations.

Additional facts are presented in the Discussion.

## II. Standard of Review

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss,

under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts, accepted as true, that are sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Giron deReyes v. Waples Mobile Home Park L.P.*, ___ F.3d ___, No. 17-1723, slip op. at 11 (4th Cir. Sept. 12, 2018); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, ___ U.S. ___, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir.

2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co.*, 637 F.3d at 440 (citations omitted); *see Semenova v. MTA*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Generally, courts do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'" through a Rule 12(b)(6) motion. *Edwards,* 178 F.3d at 243 (quoting *Republican Party v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992)). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)."

*Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.'"* *Goodman,* 494 F.3d at 464 (quoting *Forst,* 4 F.3d at 250) (emphasis added in *Goodman*).

In evaluating the sufficiency of a complaint in connection with a Rule 12(b)(6) motion, a court ordinarily "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 557 (4th Cir. 2013); *see Bosiger,* 510 F.3d 442, 450 (4th Cir. 2007). However, a court may properly consider documents incorporated into the complaint or attached to the motion to dismiss, "'so long as they are integral to the complaint and authentic.'" *U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency,* 745 F.3d 131, 136 (4th Cir. 2014) (quoting *Philips,* 572 F.3d at 180); *see Six v. Generations Federal Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Goldfarb*, 791 F.3d at 508; *Anand v. Ocwen Loan Servicing, LLC,* 754 F.3d 195, 198 (4th Cir.2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.,* 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied,* 543 U.S. 979 (2004).

To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original). *See also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)). "When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167. Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

A court may also "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert denied*, ___ U.S. ___, 138 S. Ct. 558 (2017); *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012).

As noted, plaintiff has submitted multiple exhibits with her suit. *See* ECF 1-2 at 35-40 (Loan Modification Agreement (Deed of Trust), dated December 21, 2015); *id.* at 43-47 (First NOE/QWR, dated April 5, 2017); *id.* at 2-4 (letter from Wells Fargo to Jones, dated May 31, 2017); *id.* at 6-8 (the Denial Letter, dated June 2, 2017); *id.* at 9 (the Appeal Request Form); *id.* at 11-14 (the Appeal Letter, dated June 20, 2017); *id.* at 16-17 (letter from Wells Fargo to Jones, dated July 11, 2017); *id.* at 20-23 (Second NOE/QWR, dated July 25, 2017); *id.* at 25-26 (letter from Wells Fargo to Jones, dated August 17, 2017); *id.* at 29-30 (the Final Review Letter, dated August 21, 2017). Because these exhibits were submitted with the suit, I may consider them,

without converting the Motion to one for summary judgment. *See Goines*, 822 F.3d at 166; *U.S. ex rel. Oberg*, 745 F.3d at 136; *Anand*, 754 F.3d at 198; *Am. Chiropractic Ass'n*, 367 F.3d at 234; *Phillips*, 190 F.3d at 618; *see also* Fed. R. Civ. P. 10(c).

Additionally, plaintiff has provided a web link to the Investor Guidelines. *See* ECF 1-2 at 13 (citing the Investor Guidelines, http://www.secinfo.com/dRSm6.u2Dc.b.htm#ndjc). As noted, a court "may properly take judicial notice of 'matters of public record' and other information that, under Fed. R. Evid. 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508 (quoting *Philips*, 572 F.3d at 180). In particular, pursuant to Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." And, courts may take judicial notice of publicly available records without converting a motion to dismiss to one for summary judgment. *See, e.g.*, *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015) ("[C]ourts are permitted to consider facts and documents subject to judicial notice without converting the motion to dismiss into one for summary judgment."). Accordingly, I may take judicial notice of the Investor Guidelines, without converting the Motion to one for summary judgment. *See Zak*, 780 F.3d at 607.

## III.    RESPA

### A.

RESPA is a consumer protection statute designed to protect mortgagors from "'unnecessarily high settlement charges caused by certain abusive practices' in the real estate mortgage industry," and "to ensure 'that consumers . . . are provided with greater and more timely information on the nature and costs of the settlement process.'" *Nash v. PNC Bank, N.A.*,

TDC-16-2910, 2017 WL 1424317, at *3 (D. Md. April 20, 2017) (quoting 12 U.S.C. § 2601(a)).

It is effectuated by CFPB regulations, collectively known as "Regulation X." *See Weisheit v. Rosenberg & Associates, LLC*, JKB-17-0823, 2017 WL 5478355, at *3 (D. Md. Nov. 15, 2017) (citing 12 C.F.R. §§ 1024.1 *et seq.*).

RESPA "has been read remedially . . . to further its goals of providing more information for consumers and preventing abusive practices by servicers." *Weisheit,* 2017 WL 5478355, at *3; *see Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 665-66 (9th Cir. 2012); *McLean v. GMAC Mortg. Corp.*, 398 F. App'x 467, 471 (11th Cir. 2010); *In re Carter*, 553 F.3d 979, 985, 985 n.5 (6th Cir. 2009); *Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 764 (3d Cir. 2009). But, the text of a regulation cannot "broaden the scope" of a statute. *Nash*, 2014 WL 2195779, at *6.

Among other things, RESPA requires a mortgage servicer to respond to a borrower's "qualified written request" ("QWR") seeking "information relating to the servicing of" a mortgage loan. *See* 12 U.S.C. §§ 2605(e)(1)(A). In particular, a QWR is defined as written correspondence from a borrower that "(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower", and "(ii) includes a statement of the reasons for the belief of the borrower . . . *that the account is in error* or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B) (emphasis added).

Section 1024.38(b)(2) of 12 C.F.R. explains that the objectives of the QWR process include, *inter alia*, the provision of "accurate information regarding loss mitigation options available to a borrower . . .", and to "[i]dentify with specificity all loss mitigation options for which borrowers may be eligible pursuant to any requirements established by an owner or

assignee of the borrower's mortgage loan . . . ." 12. C.F.R. §§ 1024.38(b)(2)(i), (b)(2)(ii).

In regard to a QWR, "servicing" is defined in RESPA as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3).

Within 30 days of the servicer's receipt of a QWR, the servicer must conduct an appropriate investigation, take any necessary action, such as making appropriate corrections to the borrower's account, and provide a written response to the borrower providing any requested information, describing any corrections made, or explaining its reasons for failing to do so. *Id.* § 2605(e). A servicer that fails to comply with § 2605(e) (or any provision of § 2605) is liable for actual damages and, upon a finding of a "pattern or practice" of noncompliance by the servicer, up to $2,000 in statutory damages. *Id.* § 2650(f).

If a QWR properly concerns the servicing of a loan, "after the receipt from any borrower" of the QWR, a mortgage servicer is required, under 12 U.S.C. § 2605(e)(2), to:

> (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);
>
> (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—
>
>> (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and
>>
>> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

(C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—

(i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

Section 1024.36(d)(1) of 12 C.F.R. § 1024.36(d)(1) is also pertinent. It states: ("[A] servicer must respond to an information request by either . . . (i) Providing the borrower with the requested information . . . or (ii) Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, [and] provides the basis for the servicer's determination . . . ."

Notably, "[c]ourts have repeatedly held that requests for information related to loan modifications do not concern 'servicing' and therefore are not QWRs" within the meaning of RESPA. *Nash*, 2017 WL 1424317, at *5; *see Sirote v. BBVA Compass Bank,* 857 F. Supp. 2d 1213, 1221-22 (N.D. Ala. 2010) ("'Courts routinely interpret section 2605 as requiring a QWR to relate to the *servicing* of a loan, rather than the *creation* or *modification* of a loan.'") (emphasis added in *Sirote*) (quoting *Gates v. Wachovia Mortg, FSB,* FCD/EFB-9-02464, 2010 WL 2606511, at *3 (E.D. Cal. June 28, 2010)), *aff'd,* 462 F. App'x 888 (11th Cir. 2012); *see also Hudgins v. Seterus, Inc.,* 192 F. Supp. 3d 1343, 1349-51 (S.D. Fla. 2016) ("A number of courts have held that inquiries about a loan modification do not relate to 'servicing' within the meaning of § 2605"); *Bullock v. Ocwen Loan Servicing,* PJM-14-3836, 2015 WL 5008773 at *10 (D. Md. Aug. 20, 2015) ("[A] request for information about loan modification does not constitute

a QWR."); *Mbakpuo v. Wells Fargo Bank, N.A.,* RWT-13-2213, 2015 WL 4485504, at *7-8 (D. Md. July 21, 2015) (concluding that a series of letters contending that Wells Fargo improperly denied the plaintiff's request for a modification were not QWRs); *Van Egmond v. Wells Fargo Home Mortg.*, SA-12-0112, 2012 WL 1033281, at *4 (C.D. Cal. Mar. 21, 2012) (stating that the defendant was "not obligated" to respond to the plaintiff's requests for information concerning the denial of his loan modification application because they did not concern "servicing").

In sum, "[i]n order to state a claim for a violation of RESPA's QWR provisions, the borrower must [allege] (1) a written request that meets RESPA's definition of a QWR, (2) the servicer failed to perform its duties, and (3) actual damages." *IAR Family Trust v. Suntrust Mortgage, Inc.*, 3:13-CV-418-GCM, 2014 WL 1432378, at *3 (W.D.N.C. Apr. 14, 2014).

A "notice of error" is described in 12 C.F.R. § 1024.35. It is "a form" of a QWR. *Nash*, 2014 WL 2895779, at *6. The section imposes a duty on a servicer to respond to a notice informing the servicer of specified categories of "covered errors." 12 C.F.R. § 1024.35(b) (listing the categories of "covered errors"). Upon receipt of a notice of a covered error, a servicer must investigate the borrower's assertions and provide a response within the specified time, which varies with the nature of the alleged error. *See* 12 C.F.R. § 1024.35(e). Failure to comply with the requirements of 12 C.F.R. § 1024.35 is enforceable by private action under 12 U.S.C. 2605. *See Lage v. Ocwen Loan Servicing LLC,* 839 F.3d 1003, 1007 (11th Cir. 2016) (stating that there is a private right of action to enforce 12 C.F.R. § 1024.35 under 12 U.S.C. § 2605). *But see Miller v. HSBC Bank U.S.A., N.A.,* 13-Civ-7500, 2015 WL 585589, at *11 (S.D.N.Y. Feb. 11, 2015) (stating that 12 C.F.R. § 1024.35 does not provide a private right of action for damages).

Of import here, a "covered error" includes the failure of a servicer to provide timely and

"accurate information" to a delinquent borrower regarding loss mitigation options and foreclosure. *See* 12 C.F.R. 1024.35(b)(7). But, "courts have held that a [plaintiff's] claim that a loss mitigation application was improperly denied, or that the information provided about such a denial was inadequate, is not a 'covered error' under 12 C.F.R. § 1024.35(b)." *Nash*, 2017 WL 1424317, at \*6; *see Sutton v. CitiMortgage, Inc.*, 228 F. Supp. 3d 254, 274 (S.D.N.Y. 2017) ("RESPA (through Regulation X) regulates many aspects of loss mitigation practices, but does not regulate the correctness of a loss mitigation decision, and certainly does not encompass errors in loss mitigation decisions within the catch-all provision in the definition of 'covered errors.'"); *Farraj v. Seterus, Inc.*, 15-cv-11878, 2015 WL 8608906, at \*3-4 (E.D. Mich. Dec. 14, 2015) (concluding that failure to provide the calculations leading to the denial of a mortgage loan modification is not a "covered error" under 12 C.F.R. § 1024.35).

Thus, if a borrower believes that the denial of a loan modification application is incorrect, or that the information provided by the servicer as to the denial was insufficient, the notice of error process under 12 C.F.R. § 1024.35(b) is not applicable. *Nash*, 2017 WL 1424317, at \*6. Rather, the remedy is to invoke the appeals process under § 1024.41(h). *Id.*

**B.**

Under a provision of Regulation X entitled "Loss mitigation procedures," servicers of mortgages must take certain steps when a borrower applies for loss mitigation measures, such as the loan modifications sought by Jones in this case. *See* 12 C.F.R. § 1024.41. In particular, 12 C.F.R. § 1024.41(c)(4)(i) provides: "If a servicer requires documents or information not in the borrower's control to determine which loss mitigation options, if any, it will offer to the borrower, the servicer must exercise reasonable diligence in obtaining such documents or information." And, as relevant here, "[i]f a borrower's complete loss mitigation application is

denied for any trial or permanent loan modification option available to the borrower," the servicer must state in a required notice to the borrower "the specific reason or reasons for the servicer's determination for each such trial or permanent loan modification and, if applicable, that the borrower was not evaluated on other criteria." 12 C.F.R. § 1024.41(d).

A borrower may enforce violations of this provision through a private cause of action, pursuant to 12 U.S.C. § 2605(f). *See* 12 C.F.R. § 1024.41(a). However, pursuant to 12 C.F.R. § 1024.41(a), "[n]othing in § 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation option" for which the borrower does not qualify.

Pursuant to 12 U.S.C. § 2617(a), the CFPB "is authorized to prescribe such rules and regulations, to make such interpretations, and to grant such reasonable exemptions for classes of transactions, as may be necessary to achieve the purposes of" RESPA. Plaintiff points to the CFPB Official Staff Commentary on Regulation X (the "CFPB Commentary"), F.R.R.S. 6-1444.94, 2014 WL 2195779, at *10 (June 1, 2018), for guidance in construing 12 C.F.R. § 1024.41. *See* ECF 1, ¶ 23. "Although the CFPB's commentary is not binding authority, courts have found its official interpretations to be 'highly persuasive' when they fill 'a gap in the text of Section 1024.41 and squarely address[] the factual situation described in the Complaint.'" *Nash*, 2017 WL 1424317, at *4 (quoting *He v. Ocwen Loan Servicing, LLC,* JS-AKT-15-4575, 2016 WL 3892405, at *2 (E.D.N.Y. July 14, 2016)).

As to 12 C.F.R. § 1024.41(d), the CFPB Commentary states, 2014 WL 2195779, at *10:

A servicer is required to disclose the actual reason or reasons for the denial. If a servicer's systems establish a hierarchy of eligibility criteria and reach the first criterion that causes a denial but do not evaluate the borrower based on additional criteria, a servicer complies with the rule by providing only the reason or reasons with respect to which the borrower was actually evaluated and rejected as well as notification that the borrower was not evaluated on other criteria. A servicer is not required to determine or disclose whether a borrower would have been denied on the basis of additional criteria if such criteria were not actually considered.

The CFPB Commentary further provides, *id.*:

> If a trial or permanent loan modification option is denied because of a requirement of an owner or assignee of a mortgage loan, the specific reasons in the notice provided to the borrower must identify the owner or assignee of the mortgage loan and the requirement that is the basis of the denial. A statement that the denial of a loan modification option is based on an investor requirement, without additional information specifically identifying the relevant investor or guarantor and the specific applicable requirement, is insufficient. However, where an owner or assignee has established an evaluation criteria that sets an order ranking for evaluation of loan modification options (commonly known as a waterfall) and a borrower has qualified for a particular loan modification option in the ranking established by the owner or assignee, it is sufficient for the servicer to inform the borrower, with respect to other loan modification options ranked below any such option offered to a borrower, that the investor's requirements include the use of such a ranking and that an offer of a loan modification option necessarily results in a denial for any other loan modification options below the option for which the borrower is eligible in the ranking.

A mortgage servicer must provide the borrower with a written response acknowledging receipt of the correspondence within five days (excluding legal public holidays, Saturdays, and Sundays). 12 U.S.C. § 2605(e)(1)(A). And, mortgage servicers have only 30 days (excluding public holidays, Saturdays, and Sundays) to take action on the inquiry. *Id.* § 2605(e)(2); *see also* 12 C.F.R. §§ 1024.41(c)(1)(i), (ii) (". . . within 30 days of receiving the complete loss mitigation application, a servicer shall (i) Evaluate the borrower for all loss mitigation options available . . . (ii) Provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage."); 12 C.F.R. § 1024.36(d)(2)(i)(B) ("A servicer must comply . . . not later than 30 days . . . after the servicer receives the information request.").

Mortgage servicers can obtain a fifteen-day extension "if, before the end of such 30-day period, the servicer notifies the borrower of the extension and the reasons for the delay in responding." 12 U.S.C. § 2605(e)(4). Further, under 12 U.S.C. § 6205 (k)(1)(D), "[a] servicer

of a federally related mortgage shall not-- . . . fail to respond within 10 business days to a request from a borrower to provide the identity, address, and other relevant contact information about the owner or assignee of the loan[.]" *See also* 12 C.F.R. § 1024.36(d)(2)(i)(A) (same).

Pursuant to 12 C.F.R. § 1024.41(h), a borrower may appeal a servicer's decision to deny an application for loan modification within fourteen days of being provided that decision. 12 C.F.R. §§ 1024.41(h)(1), (h)(2). The appeal is reviewed by the servicer, but must "be reviewed by different personnel than those responsible for evaluating the borrower's" initial loan modification application. 12 C.F.R. § 1024.41(h)(3). "Within 30 days of a borrower making an appeal, the servicer shall provide a notice to the borrower stating the servicer's determination of whether the servicer will offer the borrower a loss mitigation option based upon the appeal and, if applicable, how long the borrower has to accept or reject such an offer or a prior offer of a loss mitigation option." 12 C.F.R. § 1024.41(h)(4). And, a "servicer's determination under this paragraph is not subject to any further appeal." *Id.*

### IV. Discussion

### A.

In Count I, plaintiff avers that Wells Fargo violated 12 C.F.R. § 1024.41(d) in June 2017, when Wells Fargo denied her request of May 24, 2017, for a Loan modification. *See, e.g.*, ECF 1, ¶ 42. In particular, she points to the Denial Letter of June 2, 2017 (ECF 1-2 at 6-8), which stated that plaintiff was denied a Piggy-Back Program Loan modification because the "loan on the property noted above has already received the maximum number of modifications allowed." *Id.* at 7. Yet, she points out that in the Final Review Letter of August 21, 2017 (ECF 1-2 at 29-30), the Bank stated, in relevant part, that plaintiff's "account can qualify for an additional modification once five years has passed since the previous modification finalized." *Id.* at 30.

But, the Final Review Letter clarified that "there isn't a specific number of modifications the account is allowed [overall]; however, the investor requires a specific timeframe between each modification." *Id.* Therefore, she asserts, *id.* ¶ 43: "By failing to provide the correct specific information, Plaintiff was unable to determine whether she was rightfully denied and utilize her appeal rights correctly."[9]

The allegations do not constitute a violation of RESPA. The Bank indicated that the "maximum number of modifications allowed" (ECF 1-2 at 7) is one per five year period. *See* ECF 1-2 at 30. Plaintiff's own exhibit shows that she finalized a Loan modification in or about January 2016. *See id.* at 30. Because that date was less than five years prior to the modification requested on May 24, 2017 (ECF 1, ¶ 21), plaintiff had reached the maximum number of allowable modifications for the applicable five-year period. ECF 1-2 at 30. The Bank's assertion that plaintiff had the "maximum number of modifications allowed" (ECF 1-2 at 7) was fully consistent with its assertion that the "account can qualify for an additional modification once five years has passed since the previous modification finalized." *Id.* at 30.

Under 12 C.F.R. § 1024.41(d), "a servicer shall state . . . the specific reason or reasons for the servicer's determination for each such trial or permanent loan modification option and, if applicable, that the borrower was not evaluated on other criteria." 12 C.F.R. § 1024.41(d). The notice must also include the specific reasons for the servicer's determination for each modification option, the fact that the borrower may appeal the servicer's determination for any such trial or permanent loan modification option, the deadline for the borrower to make an appeal, and any requirements for making an appeal. 12 C.F.R. § 1024.41(d)(1)-(2). *See also* CFPB Commentary, 2014 WL 2195779, at *10.

---

[9] Plaintiff notes, however, that she nonetheless "submitted a substantive appeal . . . ." ECF 1, ¶ 44. *See also* ECF 1-2 at 15-18.

By letter of June 2, 2017 (ECF 1-2 at 6-8), plaintiff was advised that her application of May 24, 2017, seeking a Loan modification, was denied because she "had already received the maximum number of modifications allowed" for the applicable five-year period. And, the Bank later clarified, upon plaintiff's request, what it meant by "maximum number of modifications allowed." *See* ECF 1-2 at 7, 30. Further, in accordance with 12 C.F.R. § 1024.41(d)(2), plaintiff was informed of her right to appeal the determination, the deadline for an appeal, and the appeal requirements. *Id.* And, "[a] servicer is not required to determine or disclose whether a borrower would have been denied on the basis of additional criteria if such criteria were not actually considered." CFPB Commentary, 2014 WL 2195779, at *10. Moreover, RESPA does not "impose[] a duty on a servicer to provide any borrower with any specific loss mitigation option" for which the borrower does not qualify. 12 C.F.R. § 1024.41(a).

In Count I, plaintiff also alleges that Wells Fargo failed to provide the applicable "Investor Guidelines which support its claimed reason for the denial of the Plaintiff's modification application." ECF 1, ¶ 47. As noted, by letter to plaintiff's counsel of August 17, 2017 (ECF 1-2 at 25-26), the Bank stated that it was "unable to provide" the specific "investor guidelines" because it determined that those guidelines constituted "confidential privileged and/or proprietary information of Wells Fargo." *Id.* at 25. However, the Bank also stated that it was "still researching additional information [it] can provide to [Jones] about [her] account." *Id.* Then, by letter of August 21, 2017 (ECF 1-2 at 29-30), the Bank provided additional information, stating, *id.* at 29 (emphasis added):

> There are many workout limitations associated with [plaintiff's] type of loan:
>
> - Not eligible for Home Affordable Modification Program (HAMP) . . . . Unfortunately, [plaintiff's] loan is not one that qualifies for HAMP . . .
> - Not allowed to capitalize or increase the principal balance of the loan
> - Not allowed to set aside or forgive any portion of the principal balance

- Cannot permanently reduce the mortgage interest rate
- *Frequency limitations (Per investor guidelines, the account is eligible after five years have passed since the most recent completed modification)*

Although there are several restrictions, there are a few workout options for which [plaintiff's] account could qualify:

- [Plaintiff's loan] allows for up to 12 past due payments to be combined into a "piggy-back." All remaining past due amounts become a required customer contribution due at the first trial payment
- Temporary rate reduction only
- Repayment plan

Pursuant to 12 C.F.R. § 1024.41(c)(4)(i), "If a servicer requires documents or information not in the borrower's control to determine which loss mitigation options, if any, it will offer to the borrower, the servicer must *exercise reasonable diligence* in obtaining such documents *or information*." (Emphasis added). The Bank provided the relevant "information" to plaintiff, ECF 1-2 at 29: "Frequency limitations (Per investor guidelines, the account is eligible after five years have passed since the most recent completed modification)[.]" And, there is no indication in the Complaint that the Bank failed to act with "reasonable diligence" in providing that information. *See* 12 C.F.R. § 1024.41(c)(4)(i). Accordingly, the Bank satisfied its obligation to Jones under 12 C.F.R. § 1024.41(c)(4)(i).

Moreover, plaintiff has provided no authority indicating that the Bank's failure to provide a copy of the specific investor guidelines, rather than a summary of the relevant information the guidelines contain, amounts to a violation of RESPA or 12 C.F.R. §§ 1024.36(d)(1) and (2).

## B.

As to Count II, plaintiff avers that Wells Fargo "provided different investor names in response to Qualified Written Requests", *i.e.*, PA3 and PA5, in violation of 12 C.F.R. §§ 1024.36(d)(1) and (2). *See* ECF 1, ¶¶ 50-51. The Bank's Letter of April 24, 2017 (ECF 1, ¶ 19),

identified PA5 as the owner of plaintiff's Loan. And, by letter of August 17, 2017 (ECF 1-2 at 25-26), the Bank advised that PA3 was the owner of plaintiff's Loan. *Id.* at 26. On this basis, plaintiff avers that Wells Fargo "failed to conduct a reasonable search as to the owner of Ms. Jones' [L]oan . . ." (ECF 1, ¶ 51), and the Bank failed "to respond within 10 business days to provide the identity of the owner of the mortgage [L]oan . . . as two different owners names were provided." *Id.* ¶ 52.

Section 1024.36 of Regulation X requires loan servicers to respond and provide information requested by a borrower, or to conduct a "reasonable search" as to responsive information. Section 1024.36 does not articulate or impose a right to contest the reasonableness of the investigation. Rather, it sets forth a process and procedure for the borrower to seek information and imposes only a duty on the servicer to respond in good faith, upon a reasonable search.

As noted, the CFPB Commentary states: "If a trial or permanent loan modification option is denied because of a requirement of an owner or assignee of a mortgage loan, the specific reasons in the notice provided to the borrower must *identify the owner or assignee of the mortgage loan and the requirement that is the basis of the denial*." CFPB Commentary, 2014 WL 2195779, at *10 (emphasis added). The Bank provided plaintiff with the names of two different owners between April and August of 2017—PA3 and PA5—both of which were managed by HSBC, as trustee. ECF 1, ¶ 17.

Plaintiff has not provided authority requiring absolute accuracy under RESPA or 12 C.F.R. § 1024.36. Further, the Bank satisfied its obligation to plaintiff by providing her with information as to why the requested Loan modification was denied. *See* 12 C.F.R. § 1024.41(c)(4)(i); *see also* ECF 1-2 at 29. Because plaintiff may not modify a loan more than one

time during a five year period, the fact that PA5 and PA3 may have "unique" Pooling and Servicing Agreements (ECF 1, ¶ 17) is of no moment.

Moreover, plaintiff has not provided any authority in support of her claim that any error as to ownership of her Loan constitutes grounds for an action under RESPA. As the Bank puts it, plaintiff essentially argues that Regulation X requires "strict liability for typos no matter how *de minimis*." ECF 16 at 5. It observes, *id.*: "The Courts have never held that a servicer's search is not 'reasonable' merely because it provided an isolated typographical error, particularly one that was *de minimis* . . . ."[10] *See Hittle v. Residential Funding Corp.*, No. 2:13-cv-353, 2014 WL 3845802, at *12 (S.D. Ohio, Aug. 5, 2014) ("RESPA exists to prevent abuse of borrowers by servicers – not to enable abuse of servicers by borrowers.").

Indeed, "[c]ourts have repeatedly held that requests for information related to loan modifications do not concern 'servicing' and therefore are not QWRs" within the meaning of RESPA. *Nash*, 2017 WL 1424317, at *5; *see also* 12 U.S.C. §§ 2605(i)(3), (e)(1)(B). Moreover, "courts have held that a [plaintiff's] claim that a loss mitigation application was improperly denied, or that the information provided about such a denial was inadequate, is not a 'covered error' under 12 C.F.R. § 1024.35(b)." *Nash*, 2017 WL 1424317, at *6; *see Sutton*, 228 F. Supp. 3d at 274.

## V. Conclusion

For the foregoing reasons, plaintiff's allegations do not state a plausible claim under RESPA or Regulation X. Therefore, I shall grant the Motion.

---

[10] The Court is mindful that plaintiff suggests the Bank's errors were not isolated. But, even assuming, *arguendo*, that the Bank erred, the Bank correctly observes that Jones does not allege facts to show that the Bank failed to respond in good faith or that she relied on any error to her detriment. ECF 16 at 6.

An Order follows, consistent with this Memorandum Opinion.


Date:   September 12, 2018                          _____/s/_____
                                                    Ellen Lipton Hollander
                                                    United States District Judge